First case up this morning is 411-0973, United Community Bank v. Prairie State Bank & Trust. For the appellant is William Sauerwein. Is that pronounced correctly, sir? Yes, sir. And for the appellee is Maryann Bogie. Yes, sir. Pronounced correctly? Yes, sir. Lucky guess. Okay. Mr. Sauerwein, you may proceed, sir. Thank you. May it please the court. Counsel. Mr. Bogie. I'm Bill Sauerwein and I represent in this appeal United Community Bank and James McDonough. Both were represented by Chris Eppersbacher in the trial below and filing the appellant's original brief. We're asking you today to reverse the judgment of the trial court, which was granted on cross motions for summary judgment, and interjudgment for United Community Bank and James McDonough. I feel strongly from looking at the record and the judgments entered that the court ignored some very deeply ingrained equitable doctrines in considering the facts. And these doctrines have been around Illinois since the earliest of times. There was no real analysis of these doctrines performed, and judgment was entered against our clients essentially because they were insured. The facts, the underlying facts, the important facts of the case I think are very simple. Do you represent the appellant, sir? I was retained by the insurer to represent the insurers. I represent Mr. McDonough and United Community Bank. My duties to them are unequivocal. I am their lawyer, not the lawyer for the title insurance company who is not a party to the sanction. The facts underlying the case were quite simple. Mr. McDonough contracted to buy the property in April of 2007. Prairie State Bank, a lender to the seller of the property, recorded a judgment against the seller, Mr. Santorelli. A few months later in July of 2007. Then the sale of the contract between Mr. McDonough and Santorelli closed in September of 2007. Because they were intervening reportedly, because they recorded their transcript of judgment in the gap between the time of the contract and between the time it closed, they then asserted that they had priority over the loan to Mr. McDonough and priority over Mr. McDonough's ownership interest in the property. But this goes against the deeply ingrained doctrine of equitable conversion. That's been around since the earliest of times. Illinois Supreme Court cases tell us that equitable conversion of title occurs at the instant a valid and enforceable contract is entered into. So under that doctrine, Mr. McDonough took equitable title to the property in April of 2007, three months before the judgment lien was transcripted. So if I'm buying something from a seller, and he enters into a contract with somebody else, and then he deeds the property to me, and I examine the abstract, there's nothing recorded, I go ahead and record my deed, I'm out of luck, according to you? Well, you may be. It depends on many factors to consider, because it's an equitable doctrine. So you would look a little deeper into the facts, you would see if people had notice of the various contracts, you would see if there were any red flags out there. What if there was no notice of red flags? Then as between, if I understand your scenario correctly, Judge, as between two purchasers of the same property, it would be the first to contract for the sale of that property. Well, then recording means nothing. Well, no. You can't rely on the recorded documents at all. Well, I think you can, and I think it does mean something, obviously. We have the Conveyance Act in Illinois, and it is a way of imparting notice. Well, his hypothetical would mean nothing, though, would it not? Well, under his hypothetical, let's say if you were deeded the property first, or recorded your deed, was that your hypothetical outcome? No, no. The seller enters into the contract with the other guy, and I know nothing about it. The seller then enters into a contract with me, deeds the property to me, I go ahead and record it. And you say, I lose. Well, you don't lose. You have a different remedy. That's a clear case of fraud. He's obviously selling the same property. Does he own the property? What's that? Does his deed to that property that he's recorded, is it worth anything? Well, under his scenario, he hasn't recorded a deed yet, but the answer would be, in my estimation, your remedies would be against your seller, not the person who had the equitable title. So if the seller is broke, I'm just out of luck. That unrecorded contract takes precedence over me, who got the deed and recorded it. Well, there's no law that says you have to record that deed. How can he protect himself? I don't understand how this can work. Well, how can he protect himself as the buyer from the same seller? Yes. Well, I mean, he could investigate. He could talk to the seller. You're telling me the recording act means nothing. You're telling me it doesn't do me any good at all to go to the courthouse and examine the records. But your scenario is different than what we have here, because if you recorded the contract, then the first purchaser would be on notice. The first purchaser may not close that sale. The first purchaser may do a title search and may not close. So the recording puts all others out there potentially on notice. So whereas you might be with, you know, what would happen, in my experience, is that all these parties would then come before the court, including the seller. And under this case, it's a clear case of fraud. Under your scenario, where the seller has clearly conveyed the same property twice, we have no allegation of fraud in this case whatsoever. There was no allegation by Prairie State Bank that Mr. Santorelli was committing fraud. And so I don't believe. Did he convey the same property twice? Mr. Santorelli? No. And that's a key fact here, I think, when you go to use the Doctrine of Equitable Segregation. I'm sorry, Equitable Conversion. Mr. Santorelli did not convey anything to Prairie State Bank. Prairie State Bank gave nothing to Mr. Santorelli. They were not a lender. They did not pay for the property. They simply recorded a judgment claim that they had against the property. They were a lender to Mr. Santorelli, a construction lender. He was in the construction business. And for some reason, Prairie State Bank did not take a security interest in this property. They had security interests in other properties that were recorded. So when they received the judgment against Mr. Santorelli, they transcripted the judgment, and then the sale, and then waited until after the sale closed to Mr. McDonough before asserting a priority lien. Had they tried to enforce or execute upon that lien before the purchase, they would have had nothing. They would have gotten absolutely nothing by that execution. The property was fully encumbered with a prior loan. They knew at the time they recorded their transcript that they were subordinate to Mr. Santorelli's lender. So there's no prejudice whatsoever to this doctrine being enforced against Prairie State Bank in this manner. They would not have gotten a dime. If we were to buy the arguments asserted by Prairie State Bank, if we follow that argument, then they as a judgment lien holder would actually be in a better position than someone who paid for property or someone who loaned money against property, because they got the same bona fide status, the same bona fide lender status, but they didn't loan anything of value. They didn't pay anything of value. And these equitable doctrines have evolved, I believe, to protect people like Mr. McDonough and United Community Bank. I think they're trying to improve their position than what they would have had as a result of the sale, as a result of the closing of the sale to Mr. McDonough. There are, and when I talk about these cases being ingrained in Illinois law, the doctrine of equitable conversion clearly goes back to the beginning of case law. And the Supreme Court cases that we cited in our brief are unequivocal that a purchaser obtains all equitable title to the property at the time of that contract. The lender, in this case United Community Bank, who was Mr. McDonough's lender, they loaned the purchase money to purchase the property, they are also entitled to subrogate to the position of the lender they paid off. And that's unequivocal. There's no cases contrary to that. You don't seem to argue that very much. You seem to rely more on equitable conversion. Well, the equitable conversion doctrine in my mind would serve the buyer, because it talks about the conveyance of actual title to the buyer. So that would serve Mr. McDonough. And the equitable subrogation doctrine runs parallel to that. It's a doctrine for the lender. And they're based primarily on the same equitable principles. But the lender is entitled to subrogate to that higher priority position, because he's paid off the debts of another. And so in this case, we have two different parties, I think, under these equitable doctrines, through separate legal doctrines, but the same facts, who are entitled to priority. And that's the case that was proved below on the cross-motion for summary judgment that was filed by Mr. Eppersbacher. There really wasn't a dispute as to those facts. The dispute, and frankly, there really wasn't that big of an issue with the case law. There's no cases that say a contract must be recorded, a contract of purchase must be recorded if you want to preserve your rights. There's simply no case law to support that. And they cite the Baumann case and the Meese case as their primary cases for that proposition. Did Prairie State Bank have notice of the contract with McDonough? Well, it was contended below that they did. And this is one of my issues with the judgment that was entered. That was a material fact that was not thoroughly vetted by the court or objected to or denied by Prairie State Bank. But in paragraph, excuse me one second. Of the paragraph 20 of the Statement of Uncontroverted Facts that was filed by United Community Bank and Mr. McDonough said that Prairie State did have knowledge of the encumbrance. They were a construction lender to Mr. Santorelli. They knew that he was building homes and selling property. So they were at least on inquiry notice that the homes he built and the properties he owned and constructed on were being sold. And Prairie State Bank had constructive notice certainly of the prior lender's lien at the time they recorded their transcript judgment. Remember that's Mr. Santorelli's other lender. So they did have notice of those facts. That's clearly set out in the motion, paragraph 20 of the Statement of Uncontroverted Facts. And clearly the law that Prairie State Bank is trying to get you to impose would be new case law. A case that says you have to record a real estate contract if you want to preserve your rights. That's not done in Illinois. That's a rarity if someone records their real estate contract to purchase. I don't know of any lawyer who advises a client to do that to protect against harassment. Is there an argument that you need to examine the record before you close? Well, the record was examined by both McDonough and United Community Bank. A title agent who's listed on the documents performed a title search. And the judge drew the conclusion erroneously that that title agent missed this judgment and that negligence in performing that search could be imputed to McDonough and United Community Bank. That is directly contrary to Illinois case law and the union planner's case. That negligence cannot be imputed to either McDonough or United Community Bank. I've also cited several cases more recent than that. And there's a Ninth Circuit federal case which holds the same way. If that title search was performed and not performed correctly, then United Community Bank and Mr. McDonough had no notice that there was this potential transcript out there. It's been a long time since I handled real estate transactions. But my recollection is you do the title search. You have the closing. You hold the funds. While your deed is recorded. And then you make sure that your deed is number one in the records. And then you pay over the money. Well, I agree with every step except the make sure your deed is number one step. That's usually performed. That's the title search you're talking about that's performed prior to closing. At least the way we used to do it. You tried to make sure that the seller didn't deed something the day before. Or half an hour before you had to close it. You had the closing and then you checked the title record again before you turned over the money. Well, I can tell you in my experience I do not believe that's common practice. I believe that at the closing the deeds are exchanged. The money is exchanged and it's usually funded. And there is no search performed by closers, for instance, after the deeds are exchanged. Clearly if title insurance wasn't involved. If there was no real estate agent handling the closing. Two owners like you and I who were exchanging deeds wouldn't go to the courthouse and perform a search after we exchanged those deeds. Or that deed exchange would be valid the minute it occurs, obviously. There would be no need to do that. What did the title insurance company do wrong in this case? Well, the title insurance company that's referenced in the judge's rulings is Commonwealth Land Title Insurance Company. They are the title insurance underwriter who issued the policies. They did no title search. The title agency, and their name is on the deeds and such like that, presumably if they performed a search correctly it would have revealed the judgment by Prairie State Bank. But that's not borne out by the record on cross motions for summary judgment. That was presumed that it was missed by the title agent. And the judge then extrapolated that further. And he said, well because of that error I'm going to impute that error or that negligence to McDonough and United Community Bank. And that's contrary, absolutely contrary to established Illinois case law. And it eviscerates the coverage afforded by the policy of insurance. What the policy of insurance allows the title insurer to do is to go in and cure any defects that may have arisen. There's all sorts of defects the title insurance protects the owners against that it goes and cures or hires counsel to cure after closings or after the closings of finances. But the judge assigned that negligence to McDonough and said that Prairie State Bank is the only innocent party. What did the judge say about equitable segregation? Why don't you step in the shoes of Illinois National Bank? I believe we do. United Community Bank definitely steps into the shoes of the lender. Did the judge rule on that? Well, the judge ruled incorrectly on that if he ruled. I do not believe the judge did any analysis whatsoever of stepping into the shoes of that prior lender. Your opponent says you waived the equitable segregation issue. I have not done that. It's clearly set out in the brief filed by Mr. Eppersbacher. It goes on for a couple of pages. The cases that are cited in the reply brief are cited in the appellant's brief and expanded upon. She talked about it in her brief and we've responded to it. We've certainly not waived that argument. And it was asserted at the trial level as well as an argument in the motions for summary judgment. I just think the judge got it wrong. He stopped his analysis at insurance, and that's clear from his rulings. In the very third paragraph of his judgment, he talks about Commonwealth Title Insurance Company, and that was not part of the record below. Not proper for him to consider. Your time is up, counsel. You have an opportunity to address this again in rebuttal. Thank you. Ms. Bogan. May it please the court and counsel. Counsel. I would first like to clarify, Your Honor, a statement Mr. Sauerwein made that it's implied in the record that Prairie State had actual notice of Mr. McDonough's contract. That is not true. There was in the stipulation of facts that Mr. Eberspacher filed, he made some conclusions, but there was no stipulation of facts. And in fact, in Prairie State's motion for summary judgment, there is attached an unchallenged affidavit of Joseph Hardy, who is the president of the bank, that states that Prairie State Bank had no actual knowledge of Mr. McDonough's contract purchase in this case. I would also like to answer Justice Cook's hypothetical. If a seller entered into a contract purchase with a buyer and the contract purchaser did not record his contract to purchase, and then the seller turned around and sold it to another person who did record their deed, the purchaser that recorded his deed would prevail under the Conveyances Act. The Conveyances Act is very clear. I also would dispute Mr. Sauerwein's conclusion that there is no Illinois case law on this point. This very court, in the Nice case, specifically said a contract for deed is an instrument in writing which must be recorded under the Conveyances Act in order to give notice to subsequent purchasers and to creditors, which is what Prairie State Bank is in this case. Equitable conversion could have helped Mr. McDonough in this case had he recorded his contract. He did not do that. Because he did not do that, equitable conversion doesn't help him. Prairie State's position is that the plaintiffs have waived the separation issues in this case. There are points and authorities, and there are issues presented for review. I'm sorry, I'm a little bit nervous here. The issues presented for review do not include any discussion. They focus on equitable conversion and they focus on the title company. The brief does argue the issue, doesn't it? That's kind of the problem I had with the brief in this case, Your Honor, is that the appellate brief mainly argued equitable conversion, I believe because equitable conversion is what helps Mr. McDonough and it gets rid of Prairie State's lien on the title to the real estate. I think why they focused on that was because subrogation would not do what they want in this case. They want, and the reason that they filed this case was to get rid of Prairie State's lien. Subrogation would not get rid of Prairie State's lien. All it would do is subordinate it to what UCV paid to IMV. It would not completely take off the lien from the title to the real estate, which is what they want. Assuming we don't find forfeiture of that argument, address it on its merits. All right. There are really two kinds of subrogation. One is conventional subrogation and one is equitable subrogation. Both of these were mentioned in the motion for summary judgment. Both of them were presented in the pleadings in this case. Conventional subrogation I don't believe applies in this case because there has to be a specific agreement. The cases are very specific about this. Supreme Court cases that talk about conventional subrogation say that there has to be a specific agreement that the refinancing creditor is going to step into the shoes of the party that he refinances. In this case, there was no express agreement because UCV was not refinancing Mr. Santorelli. It wasn't refinancing the IMV mortgage. It paid it off in the course of the sale. The only really reference in this case is UCV's commitment letter to Mr. McDonough. They were going to finance his purchase contract. All that said is the only condition they put there was a title commitment in the amount of the purchase price indicating no other liens or encumbrances other than those to be paid from the proceeds of sale. Conventional subrogation I think applies more automatically. Equitable subrogation does not apply automatically. The cases are very clear. The Supreme Court in the Dix v. Mutual Insurance case specifically said it depends, equitable subrogation, the application of that doctrine, depends upon the set of circumstances in each case. So that the judge in this case had to look at the circumstances of this case and decide whether equitable subrogation should be applied to the facts of this case. And I strongly disagree with Mr. Sauerwein that the judge didn't look at these equitable doctrines. He simply refused to apply them. Why isn't it equitable if United Bank and McDonough pay off the Illinois National Bank lien? Why isn't it equitable for them to step into the shoes of Illinois National Bank? Well, Your Honor, I think what the trial court did in this case, it looked at all the facts. United Community Bank and Mr. McDonough had an opportunity to prevent this whole thing if they would have recorded the contract to purchase. Mr. McDonough's contract to purchase predated Prairie State's judgment lien. And UCB's commitment to Mr. McDonough to finance the purchase also predated Prairie State's judgment lien. Had they recorded the contract to purchase, equitable conversion would have come into play. We would not be here. I think the judge looked at that. The judge also looked, and we, Prairie State, raised this issue that what's really going on here, and there's an equitable principle that a court sitting in equity must look behind the form to the substance. And what the court did in this case was it took a look at what was really going on. And what was really going on is the title company missed Prairie State's lien. They had to do something to get it off, to save themselves from their own misfeasance. So they brought suit against Prairie State in equity seeking equitable doctrines to set aside Prairie State's lien. And the judge said, no, I'm not going to do it under the circumstances of this case. I think he took into consideration the fact that the contract to purchase was not recorded. The title insurance company's liability is limited to the amount of the policy. Yes. They don't care what happens to McDonough and United Commercial Bank. All they do is pay the amount of the policy. Yes. So why is it equitable to blame McDonough and United Community Bank for the mistake of the title company? Mr. McDonough and United Community Bank didn't record the contract to purchase. If Prairie State, if they had gotten a deed from Mr. Santorelli and a mortgage from Mr. McDonough, but had waited a week to record it, and Prairie State had slipped in the week before, the result would be the same as in this case, Your Honor. As this Court stated in the Neese case, what good are the recording documents, the recording provisions, if we don't follow them? If McDonough had examined the record before the closing and recognized that Prairie State Bank's lien was there, he would have said, hey, I'm not closing. Prairie State wouldn't have gotten anything. Well, that's not entirely true in this case either, Your Honor. Attached to the motion for summary judgment is the affidavit, and it's unchallenged, of Joseph Hardy. And actually, we have been paid three times on this very judgment. One of the times by INB, we got either $10,000 or $20,000 for release of our judgment, because they didn't want to go through the foreclosure procedure. They paid us off to take us out. So, Prairie State missed an opportunity to have that happen in this case as well. So, it's not entirely inequitable that the Court found in this case. And I think the Court just wasn't looking at the title company issue. The Court was also looking at the fact that the contract of purchase wasn't recorded in this case. You keep saying they should have recorded the contract. It seems to me they should have checked the title before they closed. Yes, they should have done that too. And that's where the title company comes in. And if they'd done that, you wouldn't have gotten anything. So, I'm having trouble with this equitable act. It's almost like you're saying the title insurance company was insuring you, which is not true. The title insurance company was not insuring Prairie State Bank. How can Prairie State Bank complain about the title insurance company? Because, and I'm of course extrapolating from what happened with other cases with IND. If they had a good offer to purchase in this case, which it appears that they did, they probably would have come to us, IND would have come to us and said, will you release your lien for some money? And we would have said, yes, we would. And taken a certain amount, and it would have closed, and we would have gotten money. What you're saying is it doesn't do you any good to report a judgment against a property where there's no equity left. Where the property is secured to the extent of the value of the property. Well, Your Honor, it does because you never know. Prairie State had an obligation. They were clearly and seriously underwater with Mr. Santorelli. They took the affirmative step of obtaining a judgment and recording it. They did what they were supposed to do under the recording acts. But recording a judgment, again, like I'm saying, doesn't do you any good if there's no equity left in the property. If the property is mortgaged up to the hilt, you don't gain anything. And this is what Mr. Sauerwein was saying. He was saying you've actually profited here by allowing Illinois National Bank's lien to be paid off, and then saying, hey, we're first in line. Well, I think certainly that a court could look at it that way. And I will not argue that a different judge looking at this case couldn't have found something different on the record. I won't argue that. I won't argue that. But that's really not the question. The question is whether the judge in this case applying equitable principles in this case to the facts of this case, whether he abused his discretion. This is a summary judgment. He can't decide the facts in a summary judgment. Well, the facts were stipulated, Your Honor. And he made a determination based on the facts that were stipulated that were before him and made a determination on those facts. Again, I don't understand how equitable subrogation doesn't work here. Well, of course it is. There was a lien on this property ahead of Prairie State Bank. The lien was paid off by United Commercial Bank. Why doesn't United Commercial Bank step in the shoes of Illinois National Bank? Well, there is another problem here, Your Honor. And that is in the motion for summary judgment and in the appellate brief and in the reply brief, the request for relief is removal of Prairie State's judgment lien. That's not what subrogation does. So the court couldn't say, I grant the plaintiff's motion for summary judgment because they were asking for relief under subrogation that they aren't entitled to. What are they entitled to? What is the nature of the relief to which they would be entitled? Well, the relief they asked for was complete removal of Prairie State's lien. And the only theory that would support that is equitable conversion, and that doesn't apply because they didn't record their contract. Under subrogation, what relief would they be entitled to? They would be entitled to UCB would leapfrog ahead of Prairie State Bank so that the title to the real estate would now be UCB mortgage, Prairie State Bank judgment lien. The problem with that, of course, and I'm assuming why they didn't argue that very forcefully, is because it wouldn't help Mr. McDonough. Because Prairie State's lien would still be a lien on the title to the real estate. Well, what could happen then is McDonough could stop paying United Commercial Bank. United Commercial Bank could foreclose the mortgage. There could be a judicial sale. And McDonough could bid it in for the value of the property. He could. And Prairie State would be out of luck. Yes, that's true, Your Honor. Although I guess Prairie State could bid it in for the value of their lien. They would end up with the property. They'd wipe out their judgment against Santorelli. They couldn't collect it anyplace else. They could also do that, too. And I'm not arguing, Your Honor, that every time there's title insurance, that this should be the result in the case. I think the judge in this case looked at the whole picture, and he said the one party that did what it was supposed to do was Prairie State, and we're in an equitable proceeding, and I'm just not going to do this. That's all he did. He didn't make any kind of finding that UCB or Mr. McDonough owed Prairie State anything. He didn't make any kind of determination against the title company. He did nothing but refuse to remove Prairie State Bank's lien from the title to Castle Pines Drive. That is all he did. Anything further? No, Your Honor. I just wondered if you had any further questions. I would respectfully request that you sustain and uphold the trial court. Thank you. Thank you, counsel. Mr. Sauerrein, any rebuttal, sir? Yes, Your Honor. Okay. A couple of things that I think were incorrect statements of the law. First of all, that equitable conversion doesn't apply until you record your deed. I'm sorry, record your contract. Every equitable conversion case from the beginning of time since the doctrine evolved involves an unrecorded contract. That's why it's an equitable remedy. It's to give the person the status they received at the time they entered into the contract. There is no law that says your contract must be recorded, and if you so rule in this case and compel everyone to record their sales contracts in order to protect against the slim potentiality that someone will record an intervening judgment lien, then it's going to be a rush to the courthouse. Everybody's going to be doing that. It would affect sales even in progress at the time the opinion is handed down. She talked about Prairie State Bank being the only innocent party, and that's what the judge found, but that's erroneous under Illinois law. McDonough and United Community Bank both did what they were required to do and were both innocent parties. There was no notice of any judgment lien or intervening lien that was or can be imputed to them. It was not contended that either of them had notice of this lien. And the judge incorrectly stopped his analysis at insurance. And the judge also found that he felt like he was letting the insurance company off the hook. But the judgment will be against McDonough, and it's his property that will be taken away. You're not letting the insurance company off the hook. I think that was an erroneous finding not based on anything. The insurance company's liability is limited to the amount of the policy, and they paid the limit of their policy already to the first lien holder, Illinois National Bank. Well, they paid off a prior lien, and that's what elevated – it was United Community Bank's funds that were used to pay off Illinois State Bank. So United Community Bank gets elevated to that position. But separately, the insurance contract insuring both United Community Bank and McDonough is limited to the policy amount, but more importantly – Which is in the purchase price amount, right? Which is the purchase price. And the other unique thing about title insurance is that it allows the title insurer to cure any problems, problems just like this that are gap recordings that arise that can't be detected before a closing, or let's say someone records something the day of closing or the day before closing. It allows the insurer to go in on behalf of the insured and cure that defect. And a ruling like Prairie State Bank is promoting would eviscerate that opportunity to provide that coverage to the insured, I think. As Ms. Hogue was arguing, I think, the reason you're going with equitable conversion and not equitable subrogation, equitable conversion would allow you to wipe out the Prairie State lien in its entirety. Equitable conversion or equitable subrogation just puts you in the shoes of Illinois National Bank. Puts the lender in the shoes of Illinois National Bank, that's correct. I would agree with that statement generally, but the doctrine of equitable conversion means that at the time they recorded their lien, that Mr. McDonough held the equitable title in the property, that Santorelli, who was the person that owed them money, Mr. McDonough didn't owe them any money, Mr. McDonough had all equitable title and Santorelli had barely a legal title. Do you agree with the principle that equitable conversion is effective only as to those with notice of the executory contract? Notice of the executory contract. I believe that notice is a factor that can be considered in weighing that doctrine, but I do not believe it's dependent on notice. If, for instance, Mr. McDonough had notice of Prairie State Bank's judgment lien and closed nevertheless, I believe it would have been much more difficult for him to enforce the doctrine of equitable conversion. That's not present in this case. There's no notice, nothing imputable. But even if Prairie State had no notice of McDonough's executory contract, equitable conversion still works? Prairie State had no notice? Yes. Equitable conversion would mean that at the time they recorded their lien, Mr. McDonough held the equitable title, not their judgment debtor, who was Mr. Santorelli. Didn't Prairie State have to have notice of McDonough's rights? Not for – well, the notice would – no, in short answer to your question. If Prairie State had notice and recorded their lien anyway, then clearly they would never have prevailed under the right analysis. That notice would be used against them in that consideration. I think possibly the line you're referring to in a case is if the buyer of the property may have notice of the intervening lien and then goes and closes anyway, how would you analyze the equitable conversion doctrine? And under those circumstances, I agree it would be much more harder for Mr. McDonough to proceed on that theory. But that's not in the record here. Okay, thank you, Counsel. Thank you, Mr. Merriam. Your advisement will be in recess for a few minutes. Thank you, Your Honor.